FILED

2019 DEC -5 PM 1: 53

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| TakeCare Insurance Company, Inc., a Guam corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>Territory of Guam, the Department of Administration, Government of Guam, and the Office of Public Accountability<br><br>    Defendants. | Civil Case No. CV0972-19<br><br>**DECISION AND ORDER** |

## I.    INTRODUCTION

This matter is before the Honorable Robert C. Naraja on Plaintiff TakeCare Insurance Company, Inc.'s ("TakeCare") Motion for Temporary Restraining Order; Order to Show Cause Why Preliminary Injunction Should Not Issue and Order to Enforce the Automatic Stay. Attorney Louie J. Yanza represents TakeCare. Defendants Territory of Guam, the Department of Administration, Government of Guam, and Office of Public Accountability (collectively "the Government") are represented by Chief Deputy Attorney General Shannon J. Taitano and Assistant Attorneys General Joseph Perez and Janice Camacho. For the reasons set forth below, the Court **DENIES** TakeCare's Motion.

ORIGINAL

## II. BACKGROUND

On April 1, 2019, the Department of Administration ("DOA") issued a request seeking proposals for Group Health and Dental Insurance for Government employees ("the RFP"). Husslein Decl. Exh. A (Aug. 26, 2019). The RFP required all bidders to submit a proposal by May 3, 2019. *Id.* at pg. 5. Pursuant to Public Law 35-2, the RFP required that Guam Regional Medical City ("GRMC"), the only private hospital on Guam, be included in the bidder's in-network. *Id.* at Amendment II. While TakeCare did not have a direct contract with GRMC, TakeCare had a previously arranged Network Access Services Agreement with insurance provider NetCare which allowed NetCare to lease to TakeCare in-network access to GRMC. Husslein Decl. Exh. 11. TakeCare intended to utilize this previously arranged agreement to satisfy the RFP's requirement that GRMC be included in TakeCare's in-network. Husslein Decl. ¶ 11. On April 30, 2019, TakeCare orally informed NetCare of its activation of the previously executed Network Access Services Agreement and gave formal notice of the same on May 1, 2019. Husslein Decl. ¶ 13; Exh. 13. Also on May 1, 2019, GRMC informed TakeCare that it would "not allow any other local health plan to access NetCare's in-network rates with GRMC" and that all "Guam-based health plans need to directly contract with GRMC for in-network rates." Yanza Decl. Exh. 1 (Aug. 26, 2019).

On May 3, 2019, two days after learning that GRMC would not allow TakeCare to access NetCare's in-network rates with GRMC, TakeCare filed a protest in which it claimed that GRMC wrongfully used the power bestowed upon it by Public Law 35-2 to disqualify TakeCare as a bidder. Husslein Decl. Exh. B. On May 21, 2019, DOA Director Edward Birn denied TakeCare's protest on the grounds that the protest was untimely. Yanza Decl. Exh. 1. Specifically, DOA held that TakeCare filed its protest outside the fourteen (14) day period

ORIGINAL

which began when it knew or should have known of the facts giving rise to the protest. *Id.* TakeCare appealed DOA's decision to the Office of Public Accountability ("OPA"), which issued its Decision and Order on May 21, 2019, granting the Government's Motion to Dismiss. Husslein Decl. Exh. C. OPA concurred with DOA, holding that TakeCare's protest should have been filed within fourteen days after April 1, 2019, when the RFP was issued. *Id.*

On July 11, 2019, DOA issued a Notice of Substantial Interest in which the Chief Procurement Officer determined that "the award of the contract without delay is necessary to protect substantial government interest." Yanza Decl. Exh. 4. On August 16, 2019, the Government orally advised TakeCare that DOA was proceeding with the RFP based on the Notice of Substantial Interest. Yanza Decl. ¶ 12. Also on August 12, 2019, TakeCare initiated this case in the Superior Court of Guam by filing a Verified Complaint for Declaratory Judgment. TakeCare's Complaint seeks a judicial determination that its protest to DOA was timely. The sole relief sought in the Complaint is a reversal of OPA's dismissal and for the matter to be remanded to OPA for consideration of the merits of TakeCare's protest.

On August 26, 2019, TakeCare filed its Motion for Temporary Restraining Order; Order to Show Cause Why Preliminary Injunction Should Not Issue and Order to Enforce the Automatic Stay. On September 9, 2019, the Government announced that the Aetna International would be the Government's exclusive insurance provider for fiscal year 2020. Second Yanza Decl. Exh. 5 (Oct. 3, 2019).

### III.  DISCUSSION

**A. Automatic stay provision of Guam procurement law**

TakeCare argues that the Government is in violation of the automatic stay triggered by the current litigation and therefore seeks a preliminary injunction to enforce the stay. The

ORIGINAL

Government counters that the automatic stay was never triggered because TakeCare's protest was untimely. Under Guam law, a stay remains in effect until final resolution of a procurement protest:

> In the event of a **timely** protest under Subsection (a) of this Section or under Subsection (a) of § 5480 of this Chapter, the Territory shall not proceed further with the solicitation or with the award of the contract prior to final resolution of such protest, and any such further action is void . . .

5 GCA § 5425(g) (emphasis added).

"Under the plain language of 5 GCA § 5425(f), the OPA's decision on a procurement protest is not final if an action is filed in the Superior Court challenging the OPA's decision." *Teleguam Holdings, LLC v. Territory of Guam*, 2015 Guam 13 ¶ 31.

> [I]n a procurement controversy under 5 GCA § 5425, the automatic stay set forth in section 5425(g) remains in effect during the fourteen-day period following OPA's decision and commencement of a civil suit within the Superior Court and continues until final resolution of the action by the Superior Court. The Government should refrain from taking action (e.g., issuing purchase orders to its chosen bidder) on a procurement award until the fourteen-day period has expired and a civil action has not been filed in the Superior Court to review the OPAs decision. There is no clearly stated legislative intent contrary to this interpretation.

*Id.*

The motion before the Court seeks a restraining order or preliminary injunction requiring the Government to enforce the automatic stay. A trial court's denial of a request for an order enforcing the automatic stay provision of Guam's procurement law is the equivalent of an order refusing to grant an injunction and therefore immediately appealable. *Guam Imaging Consultants, Inc. v. Guam Mem'l Hosp. Auth.*, 2004 Guam 15 ¶ 14.

**B. Standard for Preliminary Injunction**

To succeed in justifying a temporary restraining order or preliminary injunction, a plaintiff must show (1) a threat of irreparable injury, and (2) a likelihood of succeeding on the

ORIGINAL

merits. *Sananap v. Cyfred, Ltd.*, 2009 Guam 13 ¶ 38. The burden is on the moving party to show both the possibility of irreparable harm and probable success on the merits. *Carlson v. GTA*, 2002 Guam 15 ¶¶ 6, 8.

"A determination of irreparable harm typically focuses on categories of harm that do not easily lend themselves to monetary compensation." *Sule v. Guam Board of Examiners for Dentistry*, 2011 Guam 5 ¶ 12. "In other words, to say that the harm is irreparable is simply another way of saying that pecuniary compensation would not afford adequate relief or that it would be extremely difficult to ascertain the amount that would afford adequate relief." *Id.* (quoting *DVD Copy Control Ass'n, Inc. v. Kaleidescope, Inc.*, 97 Cal. Rptr. 3d 856, 876 (Cal. Ct. App. 2009).

A plaintiff seeking preliminary relief is required to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). Further, a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted. *San Francisco Real Estate v. Real Estate Invest. Trust of America*, 692 F.2d 814, 818 (1st Cir. 1982).

TakeCare provides several categories of harm it will allegedly suffer which could not be properly remedied by monetary compensation. Mot. at 9 (Aug. 26, 2019). These alleged harms are: (1) the loss of market share; (2) the loss of good will with Government employees and their dependents; (3) deprivation of the opportunity to compete fairly for the RFP; (4) loss of the opportunity to gain experience by performing the contract; and (5) loss of anticipated profits. *Id.* TakeCare also argues that there will be irreparable injury to Government employees and their dependents, as they will be limited in their options when selecting a health insurer. *Id.*

ORIGINAL

## I. TakeCare's alleged harm is speculative.

Before analyzing whether the specific categories of harm alleged by TakeCare are irreparable, the Court notes that all of these categories are premised upon TakeCare's speculative presumption that it would be awarded the Government contract. However, even if TakeCare were to succeed on the merits of this proceeding, the matter would only be remanded to OPA for a hearing on the merits of its procurement protest. If TakeCare were to succeed on the merits before OPA, it would then only be awarded the opportunity to participate in the bidding contest. Even then, there is no guarantee that TakeCare would actually be selected as the insurance carrier for Government employees. Pursuant to the U.S. Supreme Court's holding in *Winter*, TakeCare must demonstrate that irreparable injury is *likely* in the absence of an injunction. The Court holds that TakeCare's alleged harm is highly speculative and therefore TakeCare has failed to satisfy the first prong of the test articulated by the Guam Supreme Court in *Sananap*, 2009 Guam 13 ¶ 38. Nevertheless, the Court will address whether the categories of harm claimed by TakeCare would be considered irreparable.

## II. TakeCare's alleged harm would not be irreparable.

### a. *Loss of market share*

The Circuit Court for the D.C. Circuit has held that loss of market share is not irreparable harm. "The loss of business opportunities, market share, and customer goodwill are typically considered to be economic harms." *Air Transport Ass'n of America, Inc. v. Export–Import Bank of the U.S.*, 840 F.Supp.2d 327, 335 (D.C. Cir. 2012). "[T]he general rule in this Circuit is that economic harm does not constitute irreparable injury." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009) (internal quotations and citations omitted).

ORIGINAL

TakeCare has not provided any argument or legal authority to support its position that loss of market share cannot be remedied with monetary damages.

b. *Loss of good will*

TakeCare has not stated exactly what it means by "good will" or provided any case law to support its contention that this is an irreparable injury. The Second Circuit has held that a hotel operator at risk of losing its operation would be able to adequately calculate damages by using past profits. *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011). The Court therefore rejected the operator's argument that "loss of good will" constituted an irreparable harm.

> As the District Court noted, Dexter House has been operating since 1957 and Hotel Alexander since 2007, operations that will enable the Plaintiffs to calculate any money damages to which they might be entitled, including lost profits, based on previous rent figures. The Appellants' argument that the loss of goodwill will be irreparable fails in light of this long history. The District Court correctly found that any loss of goodwill would result from the Appellants' inability to continue operating their budget hotel business as they had in the past. The long history of operation by both Appellants ensures that they will be able to calculate money damages for any loss of goodwill they may have suffered if a taking is found.

*Id.* In the absence of any articulated argument otherwise, the Court holds that such harm may be remedied by monetary damages.

c. *Deprivation of the opportunity to compete fairly for the RFP*

TakeCare argues that its reputation is damaged by being deprived of the opportunity to compete for the RFP. The Circuit Court for the D.C. Circuit has held that "individuals and corporations have a due process liberty interest in avoiding the damage to their reputation and business caused by the stigma of broad preclusion from government contracting." *Phillips v. Mabus*, 894 F. Supp. 2d 71, 83 (D.D.C. 2012). The *Mabus* court did not, however, deal with a preliminary injunction and therefore did not hold that such reputational damage was irreparable. Not only has TakeCare failed to articulate how reputational harm is irreparable, TakeCare has

ORIGINAL

also neglected to explain how its reputation will be damaged by merely not being included in the bidding process. "In failing to supply evidence of the loss of reputation or good will beyond his own conclusory averments, Plaintiff has not made a sufficient showing that irreparable harm is likely at this point in this action." *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 486 (W.D.N.Y. 2018). The Court holds that the loss of the opportunity itself is not irreparable harm, but is instead directly tied to the speculative assertion that TakeCare would have been awarded the Government contract. To the extent that TakeCare's reputation may be harmed by not being included in the bidding process, the Court holds that such reputational damage can be remedied by monetary damages.

> d. *Loss of opportunity to gain experience by performing the contract*

TakeCare has provided no case law to support that this is a valid example of irreparable harm. TakeCare has failed to articulate how its future earnings will be significantly affected by not gaining the "experience" of fulfilling the Government contract.

> e. *Loss of anticipated profits*

TakeCare does not elaborate on how this harm is allegedly irreparable. This harm is entirely economic, ascertainable, and properly remedied by monetary damages.

> f. *Irreparable injury to Government employees*

TakeCare claims that Government employees and their dependents will be harmed by TakeCare's exclusion from the bidding process. However, third-party harm cannot be considered in the irreparable harm analysis. "The irreparable harm analysis focuses on the harm to the party seeking injunctive relief, not on potential harm to third parties." *Wooten v. BNSF Ry. Co.*, No. CV 16-139-M-DLC-JCL, 2017 WL 1066630, at *2 (D. Mont. Mar. 16, 2017). "While it may be appropriate to consider [a third party] in weighing public interest concerns, the

Court may not consider it in the irreparable harm analysis." *Nutrition Distribution, LLC v. Enhanced Athlete, Inc.*, No. 2:17-CV-2069-JAM-CKD, 2017 WL 5467252, at *2 (E.D. Cal. Nov. 14, 2017).[1]

### III. CONCLUSION

TakeCare has not met its burden of showing that it is likely to suffer harm if a preliminary injunction is not issued. Additionally, TakeCare has not demonstrated that the alleged harm is irreparable. Because TakeCare has failed to demonstrate that the alleged harm is likely and irreparable, the Court will not address whether TakeCare is likely to succeed on the merits. For the reasons above, TakeCare's Motion is **DENIED**.

SO ORDERED, this _____ day of _____, 2019 .

_____
The Honorable Robert C. Naraja
Judge *pro tempore*
Superior Court of Guam

SERVICE VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of:

YANZA, AG
OFFICE OF PUBLIC Accountability
Date: 12/5/19  Time: 2 pm

Deputy Clerk, Superior Court of Guam

---

[1] The *Nutrition Distribution* Court interpreted a standard for preliminary injunctions which required the additional prerequisite that a preliminary injunction can only be granted if it is in the public interest. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

ORIGINAL